IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


DAVID A LOCK,

      Petitioner,

v.                                                     CASE NO. 1:07-cv-144-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/


## REPORT AND RECOMMENDATION

      This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's

Alachua County jury-trial conviction for burglary while armed and armed robbery, for

which he received concurrent 129-month sentences.  Respondent has filed a response

and appendix with relevant portions of the state-court record.  Doc. 23.  Petitioner was

afforded an opportunity to file a reply but has not done so.  Upon due consideration of

the Petition, the Response, and the state-court record, the undersigned recommends

that the Petition be denied.[1]

## State-Court Proceedings

      Petitioner was charged by information with burglary while armed with a firearm,

armed robbery, and grand theft; only the first two charges proceeded to trial.  The

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

evidence presented at trial by the State focused on the testimony of the robbery victim, Travis Schuman.  According to the testimony, Petitioner was  Schuman's yard man and was familiar with  Schuman's schedule.   Schuman knew Petitioner by his first name, "Dave".   Schuman returned home on the night of the robbery and discovered a bicycle in his yard and his front door partially open.   Schuman's home had been burglarized a week earlier by someone who forced open the front door, and the door had not yet been repaired.  Upon entering the home,  Schuman was confronted by an armed man whom he immediately recognized as the Petitioner.  Petitioner was carrying a large jar of change and some videotapes.  He demanded that  Schuman give him money, and after Schuman gave Petitioner the money from his wallet, Petitioner fled  Schuman's home. Schuman told the responding officer that Petitioner had relatives who lived across the street from  Schuman, and the officer spoke with Petitioner's relatives and learned his last name.   Schuman subsequently identified a picture of Petitioner shown to him by the police.  Respondent's Appendix Exhibit ("App. Exh.") C at 26-77.

On cross-examination, Petitioner's counsel questioned Schuman regarding whether  he could have been mistaken as to Petitioner's identity given the frightening circumstances, and whether it was "remotely possible" that he was mistaken. Schuman testified: "No sir.  Without a doubt in my mind, I knew it was that man over there. . . . David Lock was the man who robbed me at gunpoint that night."  *Id*.

The police attempted to contact Petitioner at his home, but he did not come to the door.  The police returned to Petitioner's home later with his sister.  Petitioner opened the door but refused consent to search the home.  Neither the stolen property nor the firearm were recovered.  Petitioner called several family members as witnesses in his

defense.  The relatives testified that Petitioner was attending a family barbecue on the night of the burglary at the home across the street from Schuman's house, and that he was either at the barbecue or with family members until about 11:30 p.m. on the night of the burglary.  In addition to the alibi testimony, Petitioner's trial counsel argued that Schuman's identification of Petitioner could have been mistaken.  *Id*. at 79-106, 122-57. The jury found Petitioner guilty.  *Id*. at 217.

Petitioner, through counsel, appealed his conviction.  Petitioner argued that he was denied due process and a fair trial due to prosecutorial misconduct and ineffective assistance of counsel.  Petitioner also argued that the trial court made erroneous rulings on the evidence.  Apart from the ineffective-assistance arguments, the appellate brief made no arguments regarding violations of Petitioner's federal constitutional rights, and cited no federal cases or federal constitutional provisions.  *Id*. Exh. D.  Petitioner's conviction was affirmed *per curiam* without opinion.  *Id*. Exh. G, H.

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.50, raising five claims of ineffective assistance of counsel: (1) counsel failed to object to the "State's failure to properly establish the identity of [Petitioner] as the perpetrator;" (2) counsel failed to object to the State's introduction of "irrelevant prior criminal behavior and hearsay testimony implying [Petitioner] committed a prior burglary at  Schuman's residence;" (3) counsel failed to properly object or explain "the State's impermissible comment on [Petitioner's] right to remain silent;" (4) counsel failed to move for dismissal "for failure of the State to prove a prima facie case;" and (5) "the cumulative effect of counsel's errors . . . rendered the results of the trial unreliable."  *Id*. Exh. I.

The trial court denied relief on the basis of the trial record, without conducting an

evidentiary hearing.  *Id*. at 21-25.  The court analyzed Petitioner's claims under *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  As to Petitioner's first ground regarding identification, the court determined that the evidence offered at trial established that  Schuman knew Petitioner as "Dave," and  Schuman testified that he "was positive that [Petitioner] was the person who robbed him and burglarized his home."  *Id*.  Thus, there was no basis for Petitioner's counsel to object to any lack of evidence of identity of the perpetrator.

The trial court rejected Petitioner's second ground, regarding evidence of prior crimes, because the trial record established that when Schuman began to testify that he believed Petitioner had burglarized his home a week before the charged burglary, Petitioner's counsel objected, the objection was sustained, and Petitioner's counsel established on cross-examination that Schuman did not know who committed the prior burglary.  There was no trial testimony concerning Petitioner's criminal history, nor did the State offer any testimony or argument that Petitioner had committed the prior burglary.  The State cited to the fact of the prior burglary in closing argument only to show that Petitioner knew Schuman's front door was damaged following the prior break-in.

Petitioner's third ground, regarding counsel's handling of comments on Petitioner's right to remain silent, stemmed from the police officer's testimony on cross-examination that no gun or stolen property was recovered from Petitioner's house. Petitioner's counsel also elicited testimony from the officer that Petitioner had the right to refuse consent to search his house.  The State then asked the officer on re-direct whether Petitioner "could have dispelled suspicion or shown what was in his house if he

had chosen to."  Petitioner's counsel objected, and the State argued that "[t]he

Defendant has asked questions about this."  The trial court overruled the objection, and

allowed the State to ask the witness: "He could have – he could have shown that there

was nothing in his house, no gun, no Culligan water jar, no [videotapes], if he had if he

wanted to that night, couldn't he?"  The witness responded "[y]es, he could have."  App.

Exh. C at 79-106.

Petitioner's counsel renewed his objection to the testimony at the close of the

State's case, and asked the Court to instruct the State that it could not argue that the

officer's testimony demonstrated the Petitioner's consciousness of guilt.  The trial court

noted that Petitioner's counsel had "opened the door" to the State's line of questioning

by eliciting testimony from the officer that no gun or stolen property was recovered from

Petitioner's house.  *Id*. at 119-21.  Over Petitioner's counsel's objection, the State

argued in closing argument that there may or may not have been stolen property in

Petitioner's house but he "had the opportunity."  *Id*. at 176-77.  On postconviction review,

the trial court determined that Petitioner was not entitled to relief on the ground of

ineffective-assistance because his trial counsel objected to the testimony and to the

State's closing argument, and his objections were overruled.

The trial court rejected Petitioner's fourth ground for relief, regarding counsel's

failure to move for dismissal when the state failed to prove a prima facie case, because

the record established that counsel did, in fact, move for a judgment of acquittal at the

close of the State's case, and renewed the motion at the close of all of the evidence.

App. Exh. B. at 158.

The trial court rejected Petitioner's fifth ground for relief, regarding alleged

cumulative errors by trial counsel, because Petitioner had failed to prove any of the alleged individual errors.  App. Exh. I at 21-25.

The First District Court of Appeal affirmed, *per curiam*, without opinion.  App. Exh. R.  Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800, but the trial court denied the motion and Petitioner did not appeal.  App. Exh. M.

Petitioner then filed the instant federal habeas petition, which Respondent concedes is timely.   As grounds for relief, Petitioner recites verbatim the grounds asserted in his brief on direct appeal from his conviction (denial of fair trial and due process on account of prosecutorial misconduct and ineffective-assistance (seven claims), and erroneous judicial rulings).  Doc. 1.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and

legal bases for the claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005)

(quotations and citations omitted).  A petitioner may raise a federal claim in state court

"by citing in conjunction with the claim the federal source of law on which he relies or a

case deciding such claim on federal grounds, or by simply labeling the claim 'federal.' "

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law,

the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir.

1999).  Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to

properly present the claim and actual prejudice from the default, or (2) that a

fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at

1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation

has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*,

592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a

petitioner must present new reliable evidence that was not presented at trial showing

that "it is more likely than not that no reasonable juror would have found petitioner guilty

beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that Petitioner's claims regarding prosecutorial misconduct

and erroneous trial court rulings are unexhausted because they were not "fairly

presented" to the state appellate court as federal constitutional claims.  *See* App. Exh. E.  Petitioner's

state appellate brief supports Respondent's argument.  *See* App. Exh. E.  Petitioner's

appellate counsel cited only state cases in support of the appellate arguments, and

there is no mention in the brief of any federal constitutional claim, apart from the ineffective-assistance claims.  In the instant petition Petitioner states, without elaboration, that this Court has "pendent jurisdiction" over such claims, but clearly pendent jurisdiction has no bearing on the exhaustion requirement of § 2254.  On the basis of this record, the Court concludes that Petitioner's claims alleging prosecutorial misconduct and erroneous trial court rulings were not exhausted as federal constitutional claims in the state courts.  Because Petitioner clearly would be barred from now pursuing these claims in state court, they are procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice.  Petitioner makes no claim that he can show cause and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claims.

Respondent further argues that three of Petitioner's ineffective-assistance claims are unexhausted because they were not presented in Petitioner's Rule. 3.850 motion. Petitioner's state appellate brief listed seven ineffective-assistance grounds.  In his Rule 3.850 motion, Petitioner conceded that claims of ineffective-assistance are not properly raised on direct appeal, and cited Florida cases for the proposition that unless the state appellate court "expressly addresses the issue of ineffectiveness of counsel, an affirmance on direct appeal should rarely, if ever, be treated as a procedural bar to a claim of ineffective assistance of counsel on a post-conviction motion."  App. Exh. I at 3 (quoting *Corzo v. State,* 806 So.2d 642*,* 645 (Fla. 2nd DCA 2002)).  In this case, the state appellate court did not expressly address any of Petitioner's appellate ineffective-assistance arguments on direct appeal, and thus they were not foreclosed from review in

Petitioner's Rule 3.850 motion. *See id*.

However, in Petitioner's Rule 3.850 proceeding, Petitioner raised only four of the ineffective-assistance claims raised in his brief on direct appeal, and added a fifth "cumulative error" claim that was not raised in his appellate brief.  The remaining three claims, identified as claims "c", "f", and "g" in his appellate brief and in the instant Petition, were not raised in the Rule 3.850 motion, and therefore the Court agrees that such claims are unexhausted.[2]  Because Petitioner clearly would be barred from now pursuing these claims in state court, they are procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or fundamental miscarriage of justice.  Petitioner makes no claim that he can show cause and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claims.

Accordingly, the Court will address only the four ineffective-assistance claims in the instant Petition that Petitioner exhausted in the state court by way of his Rule 3.850 motion.[3]

_____

[2]The unexhausted claims are: That defense counsel emphasized Petitioner's involvement in the offense (claim "c"); that defense counsel failed to object to the state eliciting "erroneous hearsay . . . as prejudicial to the Petitioner's defense of alibi" (claim "g"); and that defense counsel failed to object to closing argument "disparaging the Petitioner's defense of alibi by suggesting it could be overcome by possibilities, maybes, and erroneous hearsay, and move for mistrial" (claim "g").

[3]Petitioner's fifth claim in his Rule 3.850 motion regarding cumulative errors by counsel is not raised in the instant federal petition.

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases

"[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## Ineffective Assistance of Counsel

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on

either the performance or the prejudice prong.  *Id.* at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging

the performance of counsel "is a most deferential one."  *Id.*  at 788.   When combined

with the extra layer of deference that § 2254 provides, the result is double deference and

the question becomes whether "there is any reasonable argument that counsel satisfied

Strickland's deferential standard."  *Id*.  Double deference is doubly difficult for a

petitioner to overcome, and it will be a rare case in which an ineffective assistance of

counsel claim that was denied on the merits in state court is found to merit relief in a

federal habeas proceeding.

### Petitioner's Claims

Petitioner has made a bare-bones assertion of four ineffective-assistance claims,

but he has provided the Court with no argument as to why the state court's rejection of

the same four claims was contrary to, or an unreasonable application of, federal law.

*See* Doc. 1.  Upon an independent review of the trial record and the state court's

disposition of these claims on postconviction review, and mindful of the high degree of

deference that is afforded to the state court's assessment of the merits of Petitioner's

claims, the Court concludes that Petitioner has presented no basis for federal habeas

relief.

Although the state court did not explicitly say so, it is apparent that each of

Petitioner's ineffective-assistance claims was rejected on *Strickland*'s deficient-

performance prong.  On the first claim, the court found that there was no factual basis

for Petitioner's counsel to object to the State's failure to establish identity, because there

was unequivocal testimony regarding Petitioner's identity.  The jury was entitled to credit

this testimony over the testimony of Petitioner's alibi witnesses.  On Petitioner's second

claim, the trial court found that Petitioner's counsel immediately objected to testimony

that could have connected Petitioner to the prior burglary of Schuman's house, and then counsel established that Schuman did not know who committed the prior burglary. Petitioner's third claim was rejected because counsel objected to the testimony and argument that called attention to Petitioner's refusal to consent to a search of his home, but his objections were overruled.   The trial court rejected Petitioner's fourth claim because the record established that counsel did in fact move for a judgment of acquittal at the close of the State's case-in-chief, and renewed his motion at the close of all of the evidence.  *See* App. Exh. I at 21-25.  Each of these findings is supported by the trial record, and Petitioner has made no showing to the contrary.  *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Because Petitioner's claims failed on *Strickland's* deficient-performance prong, it was not necessary for the state court to assess whether any errors by counsel amounted to *Strickland* prejudice.  Based upon this Court's review of the record, the Court is satisfied that there is no reasonable probability that, absent the errors alleged by Petitioner, the jury would have had a reasonable doubt respecting Petitioner's guilt.  *See Strickland*, 466 U.S. at 695.  In particular, Schuman's identification of Petitioner was unequivocal, despite defense counsel's diligent and persistent efforts to cast doubt upon the testimony, and it is apparent that the jury credited Schuman's testimony in determining that Petitioner was guilty beyond a reasonable doubt.  *See* App. Exh. C. at 60-73, 74-77.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for

a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be

**DENIED**.

**IN CHAMBERS**  this 15th day of June 2011.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.